IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**DORIAN K. OWENS,**

    **Petitioner,**

v.                                        CASE NO. 22-3174-JWL-JPO

**KEVIN PAYNE, Commandant,**
**United States Disciplinary Barracks,**

    **Respondent.**

**MEMORANDUM AND ORDER**

This matter is a petition for a writ of habeas corpus filed under 28 U.S.C. § 2241. Petitioner is confined at the United States Disciplinary Barracks ("USDB") at Fort Leavenworth, Kansas. Petitioner challenges the August 8, 2017 decision rendered by the Air Force Court of Criminal Appeals ("AFCCA") in the reassessment phase of sentencing. The Court denies the Petition, finding that Petitioner has failed to show he raised his claims before the military courts and has failed to demonstrate cause and actual prejudice excusing his procedural default.

**I. Factual Background**

Petitioner is a former active-duty member of the United States Air Force and is an inmate confined at the USDB. On March 3, 2015, at Malmstrom Air Force Base, Montana, Petitioner was convicted by a panel of officers of rape, sexual assault, and abusive sexual contact, all in violation of Article 120, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 920. (Vol. 1, at 201–203; Vol. 10 at 2550.)[1] On this same date, Petitioner was sentenced to forfeiture of all pay and allowances, reduction to the grade of E-1, confinement of 35 years, and a dishonorable

---

[1] In support of his Answer, Respondent submitted 16 volumes containing the record of trial and one volume containing the appellate record. The records are attached to the Answer and are referenced by Volume No. and the Bates stamped page(s). *See* Docs. 10–1 through 10–17.

discharge from the service. (Vol. 10 at 2623.) The convening authority, Major General Jack Weinstein, approved the sentence as adjudged, with the exception of the total forfeiture of pay and allowances. Major General Weinstein waived the mandatory forfeitures to the maximum extent for the benefit of Petitioner's spouse and children. (Vol. 10 at 2629.)

The basic facts relevant to Petitioner's court martial convictions were described by the United States Air Force Court of Criminal Appeals (AFCCA) in its first decision as follows:

> The sexual assault offenses charged in this case surrounded [Petitioner's] misconduct with three different women from January 2014 until September 2014. The victims did not know each other before the investigation of [Petitioner] by the Air Force Office of Special Investigations (AFOSI).
>
> Staff Sergeant (SSgt) LF was the first individual to report [Petitioner] had sexually assaulted her. [Petitioner] and SSgt LF knew each other through mutual friends and associated social events. On 18 January 2014, SSgt LF, [Petitioner], and others attended a party at the on-base home of a mutual friend. At some point during the party, [Petitioner] took SSgt LF's cellular phone, promising to give it back to her if she listened to [Petitioner's] relationship advice. SSgt LF complied with [Petitioner's] request, but he did not return her cellular phone as promised. After all of the other guests left the party, SSgt LF left without her cellular phone.
>
> As she was walking to her car, SSgt LF was met by [Petitioner], who lived across the street from the party. [Petitioner] eventually entered SSgt LF's car and asked her to drive to a nearby cul-de-sac so they could continue their conversation from the party. [Petitioner] promised to return SSgt LF's cellular phone if she complied with his request.
>
> After driving to the cul-de-sac and parking her car, SSgt LF requested [Petitioner] return her cellular phone as promised. [Petitioner] again refused, advising SSgt LF he was not done talking with her. [Petitioner] then informed SSgt LF of his romantic feelings for her and began touching and kissing her without her consent, which was the basis for the abusive sexual contact charge. SSgt LF reported [Petitioner's] misconduct the next day to her chain of command, which resulted in an AFOSI investigation and preferral of charges against [Petitioner].

[Petitioner] submitted a request for discharge in lieu of trial by court-martial based on the offenses alleged by SSgt LF. This request was initially approved, but later withdrawn by the convening authority when a local civilian, SR, reported [Petitioner] had sexually assaulted her.

SR informed local authorities she became sick at a local bar during an evening out with friends at the end of September 2014. After vomiting in the restroom, SR went to the parking lot of the establishment and fell asleep or passed out in her vehicle when she was unsuccessful in contacting a friend to give her a ride home. At some point, [Petitioner] opened the door of the vehicle and asked SR, "What's a gorgeous girl like you doing passed out in a truck?" [Petitioner] eventually shut the door and walked away, but came back later and sat down in the passenger's seat of SR's vehicle. SR felt sick again at this point and vomited outside of her vehicle door while [Petitioner] held her hair.

[Petitioner], whom SR had never met before, then offered to give SR a ride home. SR agreed as she needed to get home at some point to care for her 11 year–old daughter. [Petitioner] removed SR's keys from her vehicle, grabbed her purse, and assisted her in getting into [Petitioner's] vehicle for the ride home. SR reported she was dizzy and physically unstable during this time, which was later confirmed by security camera footage.

After arriving at SR's apartment complex, [Petitioner] insisted he would walk SR to her front door. SR reported she became sick again immediately after opening her apartment door and went directly to her bathroom to throw up. [Petitioner] entered the apartment at the same time and held SR's hair as she vomited in the bathroom. SR then went to her bedroom to lay down. [Petitioner] also entered the bedroom and eventually started to remove SR's clothing without her consent. SR then passed out, but later awoke to [Petitioner] having sexual intercourse with her. SR reported the incident to a friend shortly after [Petitioner] left her apartment.

Although SR did not know [Petitioner] prior to the assault and could not provide his name to civilian law enforcement authorities, [Petitioner] was eventually identified through security camera footage of the bar parking lot. [Petitioner's] subsequent arrest for the assault of SR garnered local media attention. Based on one media article, a third victim, JS, informed local authorities that

> [Petitioner] had sexually assaulted her approximately two weeks prior to the assault of SR.
>
> JS reported she met [Petitioner] through social media and eventually agreed to meet him for a date. After visiting a few bars for drinks, JS decided to end the date and drive home. Prior to departing the last bar, however, [Petitioner] informed JS he wanted to take her home and have sex with her. JS specifically told [Petitioner] she was not interested in a sexual relationship.
>
> [Petitioner] insisted that he ensure JS arrived home safely, so he followed her home in his vehicle. [Petitioner] walked JS to the door of her apartment and asked if he could come inside. JS acquiesced as she did not believe [Petitioner] was dangerous.
>
> [Petitioner] and JS then sat down on a couch and started kissing each other. When [Petitioner] attempted to remove her shirt, JS excused herself and went to the bathroom to secure her shirt and bra. When JS returned, [Petitioner] again tried removing JS's clothing, eventually removing her pants even though JS struggled to keep them on. JS attempted to prevent [Petitioner] from having sexual intercourse with her by blocking her vaginal area with her hands. However, [Petitioner] moved her hands and eventually engaged in sexual intercourse with JS without her consent.

*United States v. Owens*, 2016 WL 7610799, at *1–3 (A.F. Ct. Crim. App. Dec. 16, 2016).

On direct appeal, Petitioner raised seven assignments of error: (1) the evidence supporting his convictions was legally and factually insufficient; (2) the military judge erred in failing to release mental health records for one of the victims under Mil. R. Evid. 513; (3) the military judge erred in prohibiting the defense from presenting a pretext communication between one of the victims and Petitioner for purposes of impeachment; (4) the military judge erred in denying Petitioner's motion to dismiss due to the Government's failure to preserve evidence; (5) the trial counsel engaged in improper argument; (6) the military judge erred in instructing the panel on reasonable doubt; and (7) Petitioner's sentence was inappropriately severe. *Id*.at *1.

On December 16, 2016, the AFCCA affirmed in part and reversed in part Petitioner's convictions and resulting sentence. *Id*. The AFCCA found that the conviction for the rape of JS, as alleged in the specification of the Additional Charge, was factually insufficient, and instead approved the finding of guilt to the lesser included offense of sexual assault as originally charged by the Government in Specification 4 of Charge II. *Id*. at *12. The Court then reassessed Petitioner's sentence to a dishonorable discharge, confinement for 30 years, and a reduction to E-1. *Id*.

On February 9, 2017, Petitioner (through counsel) sought review with the Court of Appeals for the Armed Forces (CAAF). (Vol. 17 at 3902.) Here, Petitioner raised only two (2) issues: (1) whether the Court of Criminal Appeals violated his Fifth Amendment right against Double Jeopardy when it affirmed a conviction for the lesser included offense of sexual assault by bodily harm, when Petitioner was charged with that same offense at trial and acquitted by a panel of officers; and (2) whether the Court of Criminal Appeals erred when it found sexual assault by bodily harm, when charged to include the additional element of lack of consent, to be a lesser-included offense of rape by unlawful force, which does not require proof of lack of consent. (Vol. 17 at 3906.)

On March 8, 2017, the CAAF granted review of Petitioner's first issue. *United States v. Owens*, 76 M.J. 168 (C.A.A.F. March 8, 2017). The CAAF reversed the decision by the AFCCA as to Specification 4 of Charge II. *Id*. The CAAF ordered that the guilty finding as to that specification should be set aside, and the specification dismissed. *Id*. The CAAF affirmed the remaining findings and returned the matter to the Judge Advocate General of the Air Force for remand to the AFCCA which was permitted to reassess Petitioner's sentence based on the affirmed findings by the CAAF. *Id*.

Upon remand from the CAAF, the AFCCA reduced its description of the facts as follows:

> Contrary to [Petitioner's] pleas, a panel of officer members convicted [Petitioner] of rape, sexual assault, and abusive sexual contact, all in violation of Article 120, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 920. These offenses were committed against three different women: JS (rape by unlawful force), SR (sexual assault when the other person is incapable of consenting due to impairment by an intoxicant), and Staff Sergeant (SSgt) LF (abusive sexual contact by causing bodily harm). The Government also charged [Petitioner] with two additional specifications of sexual assault arising out of the same underlying criminal conduct against JS (sexual assault by causing bodily harm) and SR (sexual assault by causing bodily harm). These respective specifications were charged in the "alternative" to the rape and sexual assault offenses that [Petitioner] was charged with and convicted of at trial. The panel found [Petitioner] not guilty of both "alternative" specifications. [Petitioner] was sentenced to a dishonorable discharge, 35 years of confinement, total forfeiture of pay and allowances, and reduction to E–1. The convening authority approved the sentence as adjudged, with the exception of total forfeiture of pay and allowances. Mandatory forfeitures of pay were waived to the maximum extent for the benefit of Appellant's spouse and children.

*United States v. Owens*, 2017 WL 4003922, at *1 (A.F. Ct. Crim. App. Aug. 8, 2017).

The AFCCA noted that the CAAF reversed the AFCCA's decision as to Specification 4 of Charge II, set aside the finding of guilty, and dismissed the specification. *Id*. at *2. The remaining findings were affirmed and the record was remanded to the AFCCA to reassess the sentence based upon the affirmed findings. *Id*. Upon remand from the CAAF, the AFCCA reassessed Petitioner's sentence and concluded that "based on the totality of the circumstances surrounding the remaining convictions, the panel [of officers] would have imposed a sentence not less than a dishonorable discharge, confinement for 20 years, and reduction to E-1." *Id*. at *3. The record does not reflect that Petitioner sought an appeal from this decision.

On August 19, 2022, Petitioner filed the instant § 2241 Petition, raising three grounds for relief. Petitioner's claims stem from the following statement in the AFCCA's decision:

6

"[Petitioner] happened upon an impaired stranger and, under the guise of chivalry, convinced her to permit him to get her home safely. [Petitioner's] true purpose, however, was later revealed when SR woke up to him choking and penetrating her." *Id*.

As Ground One, Petitioner claims that after remand from the CAAF, the AFCCA violated the Fifth Amendment when it utilized a false narrative to justify a sentence of twenty years. Petitioner alleges that the AFCCA committed fraud by stepping outside the bounds of the Record of Trial when it stated that SR woke up to Petitioner choking and penetrating her. (Doc. 1, at 6.)

As Ground Two, Petitioner claims a Sixth Amendment violation because he claims he was not allowed to confront all witnesses against him. *Id*. Petitioner claims that the AFCCA took the purported testimony of BY, who never testified at trial, as verbatim during sentencing despite the fact that SR stated that she believed BY was confused and SR clarified that she had never been choked. *Id*.

As Ground Three, Petitioner claims cruel and unusual punishment in violation of the Eighth Amendment. *Id*. Petitioner claims that the use of the false information without correcting the record constitutes fraud and resulted in him receiving a twenty- year sentence. *Id*. Petitioner claims that based upon the merits and comparable cases his conviction would have resulted in a sentence of between three and seven years. *Id*. Petitioner claims that ignoring these actions at all levels of the administrative agency is cruel punishment. *Id*.

Petitioner asks this Court to vacate the entire court martial and to release him from custody. *Id*. at 7.

## II. Standard of Review

A federal court may grant habeas corpus relief where a prisoner demonstrates that he is

"in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c). However, the Court's review of court-martial proceedings is very limited. *Thomas v. U.S. Disciplinary Barracks*, 625 F.3d 667, 670 (10th Cir. 2010). The Supreme Court has explained that "[m]ilitary law, like state law, is a jurisprudence which exists separate from the law which governs in our federal judicial establishment," and "Congress has taken great care both to define the rights of those subject to military law, and provide a complete system of review within the military system to secure those rights." *Nixon v. Ledwith*, 635 F. App'x 560, 563 (10th Cir. Jan. 6, 2016) (unpublished) (quoting *Burns v. Wilson*, 346 U.S. 137, 140 (1953)). "[W]hen a military decision has dealt fully and fairly with an allegation raised in [a habeas] application, it is not open to a federal civil court to grant the writ simply to re-evaluate the evidence." *Thomas*, 625 F.2d at 670 (quoting *Burns*, 346 U.S. at 142). Instead, it is the limited function of the civil courts "to determine whether the military have given fair consideration to each of the petitioner's claims." *Id*. (citing *Burns*, 346 U.S. at 145).

"Like a state prisoner, a military prisoner must fully exhaust his claims in the military courts before raising a claim on federal habeas review." *Nixon*, 635 F. App'x at 565 (citations omitted). "As with unexhausted state habeas claims, [the court] may review a claim that was not presented to the military courts if the military prisoner shows both 'cause excusing the procedural default and actual prejudice resulting from the error.'" *Id*. (citing *Lips v. Commandant*, 997 F.2d 808, 812 (10th Cir. 1993)); *see also Brimeyer v. Nelson*, 712 F. App'x 732, 735 (10th Cir. 2017) (unpublished) ("If a petitioner failed to raise a claim in the military courts, it is waived and may not be considered absent a showing of good cause and prejudice.") (citation omitted).

8

**III. Analysis**

"[I]f a ground for relief was not raised in the military courts, then the [federal] court must deem that ground waived." *Evans v. Horton*, 792 F. App'x 568, 570 (10th Cir. 2019) (unpublished) (quoting *Roberts v. Callahan*, 321 F.3d 994, 995 (10th Cir. 2003)). In *Evans*, the Tenth Circuit found that where the petitioner did not contest that he failed to raise his claims before the military courts, he waived the argument. *Id*.

Petitioner does not allege that he raised his claims before the military courts, and instead sets forth the various review boards and clemency and parole boards to which he raised his claims. Petitioner alleges in his Petition that he raised the issue before the Air Force Review Boards Agency (SAF/MRB), the Air Force Clemency & Parole Board (SAF/MRBB), the Director of Air Force Review Boards Agency (SAF/MRB), the Office of the Assistant Secretary of the Air Force for Manpower and Reserve Affairs, and to the Office of the Inspector General, Secretary of the Air Force. (Doc. 1, at 2–3; Doc. 11, at 3–4, 9–15.) Petitioner alleges that he also filed an Article 74(a)(b) Clemency Action with the Air Force Clemency & Parole Board (SAF/MRBB). (Doc. 1, at 5.)

However, Military Review Boards, such as the Air Force Clemency and Parole Board, do not sit to remedy alleged constitutional violations in the same manner as military courts. In short, the three claims raised in the instant petition "could have been raised before the military courts" rather than before a Military Review Board. *Huschak v. Gray*, 642 F.Supp.2d 1268, 1276–77 (D. Kan. 2009) (holding that petitioner's Double Jeopardy claim should have been raised before the military courts rather than the AFC&PB and thus was considered waived).

Petitioner failed to present his claims in the military courts by seeking review with either the AFCCA or the CAAF. *See Brimeyer*, 712 F. App'x at 737 ("By presenting this claim to both

the NMCCA and the CAAF, Mr. Brimeyer gave the military courts 'one full opportunity to resolve any constitutional issues by invoking one complete round of the [military's] established review process.'") (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999)).

Nothing in the record indicates that there was any cause for Petitioner's procedural default. Petitioner has not shown that the legal or factual basis for his claims was unavailable to him or his defense counsel at the time the AFCCA rendered its August 8, 2017 decision. Petitioner suggests that he did not have an avenue for review in the military courts. *See* Doc. 11, at 2. However, the posture of Petitioner's case was like that in *United States v. Lovett*.

In *Lovett*, the accused was convicted by general court martial and on appeal the AFCCA affirmed. *United States v. Lovett*, 2002 WL 31235410 (A.F. Ct. Crim. App. Sept. 9, 2002). The CAAF granted Lovett's initial petition for review, affirmed in part and set aside in part, and remanded to the Court of Criminal Appeals "which may reassess the sentence or order a sentence rehearing"). *United States v. Lovett*, 59 M.J. 230, 237 (C.A.A.F. Feb. 3, 2004). On remand, the AFCCA reassessed the sentence. *United States v. Lovett*, 2004 WL 1932870, at *3 (A.F. Ct. Crim. App. Aug. 25, 2004). After reassessment of the sentence, Lovett again petitioned for review, which was granted, and the CAAF affirmed. *United States v. Lovett*, 63 M.J. 211 (C.A.A.F. June 6, 2006); *see also United States v. Nicola*, 2018 WL 4309712 (A.C. Crim. App. March 28, 2018) (Army Court of Criminal Appeals' decision setting aside a guilty finding on one of the charges, affirming the remaining findings of guilty, and reassessing the sentence), *review granted by* 78 M.J. 59 (C.A.A.F. July 20, 2018), and *affirmed by* 78 M.J. 223 (C.A.A.F. Jan. 9, 2019); *see also United States v. Roach*, 69 M.J. 17, 21 (C.A.A.F. May 10, 2010) (stating that the court "review[s] the sentence appropriateness decisions of the Courts of Criminal Appeals for abuse of discretion" and may "order a *de novo* review when the lower court has

erred as a matter of law") (citations omitted); *United States v. Lacy*, 50 M.J. 286, 288 (C.A.A.F. May 12, 1999) ("With respect to reviewing the actions of the Courts of Criminal Appeals on issues of sentence appropriateness, our review is limited to preventing 'obvious miscarriages of justice or abuses of discretion.'") (citations omitted).

Petitioner states that based on the position of the military courts of criminal appeals, "it would be futile for Petitioner to file in the military courts. To do such would result in an outcome that is easily predictable as the military has successfully clarified its position." (Doc. 11, at 7.) Futility does not automatically constitute cause. *Evans*, 792 F. App'x at 571 (citing *Bousley v. United States*, 523 U.S. 614, 622 (1998) ("[F]utility cannot constitute cause if it means simply that a claim was 'unacceptable to that particular court at that particular time.'") (quoting *Engle v. Isaac*, 456 U.S. 107, 130 n.35 (1982)).

Where nothing in the record indicates that there was any "excuse" for a procedural default, the "cause and actual prejudice" standard has not been met and the claim will not be reviewed "on the merits" in the present federal habeas corpus proceeding. *Lips*, 997 F.2d at 812 (citations omitted); *see also White v. Lansing*, 8 F. App'x 862, 864 (10th Cir. 2001) (unpublished) (where nothing in the record indicates that there was an excuse for the procedural default, the cause and prejudice standard was not met).

Even if Petitioner could show cause, he would also be required to show actual prejudice resulting from the alleged constitutional violations. *Evans*, 792 F. App'x at 571 (citation omitted). "Moreover, '[t]he burden of showing prejudice is not an easy one.'" *Id*. (quoting *Daniels v. United States*, 254 F.3d 1180, 1191 (10th Cir. 2001)). "[I]t is not enough to assert that an error '*might have* changed the outcome of the trial.'" *Id*. (citation omitted). Instead, Petitioner "must convince [the Court] that 'there is a reasonable probability' that the result of the

trial would have been different" if his alleged constitutional violations as set forth in the Petition had not occurred. *Id*. (citations omitted).

Petitioner has failed to meet the standard to show prejudice. Petitioner alleges that the AFCCA's sentence was unconstitutional because the decision included a statement that SR woke up to Petitioner choking her. Petitioner suggests that the AFCCA committed fraud when it stated that Petitioner "happened upon an impaired stranger and, under the guise of chivalry, convinced her to permit him to get her home safely. [Petitioner's] true purpose, however, was later revealed when SR woke up to him choking and penetrating her." *United States v. Owen*, 2017 WL 4003922, at *3. Petitioner argues that SR had no memory of Petitioner choking her but that she was having recurring nightmares of Petitioner choking her.

The AFCCA has broad discretion to reassess a sentence upon remand, and reached the conclusion that a twenty-year term of imprisonment was appropriate given that Petitioner's "remaining convictions capture[d] the gravamen" of his criminal conduct, namely, "sexual offenses committed against multiple victims." *Id*. The AFCCA found that Petitioner "remains convicted of the most aggravating and disturbing offense: the sexual assault of SR." *Id*.

Petitioner also claims that he was unable to confront a witness because SR testified about her recurring dreams of being choked and her conversations with a friend, BY, about those dreams. Because SR did not testify to anything BY said, but merely stated that she had a conversation with him, Petitioner has not shown prejudice regarding his Confrontation Clause claim.

Petitioner also claims that his sentence was unduly harsh. The AFCCA stated in its decision that the "maximum imposable sentence to confinement for the remaining offenses of sexual assault of SR and abusive sexual contact of SSgt LF is 37 years." *Id*. In imposing a

sentence of confinement for 20 years, the AFCCA found that Petitioner's "sexually charged criminal acts against two different victims convince us the reassessed sentence is not inappropriately severe." *Id*.

Petitioner fails to show that he fully exhausted his claims in the military courts before raising the claims in his Petition. Petitioner also fails to demonstrate cause and actual prejudice excusing his procedural default. Where the "cause and actual prejudice" standard has not been met, the claims will not be reviewed "on the merits" in the present federal habeas corpus proceeding. *Lips*, 997 F.2d at 812 (reversing and remanding with direction to the district court to deny the petition).

**IT IS THEREFORE ORDERED BY THE COURT** that the Petition is **denied.**

**IT IS FURTHER ORDERED** that the Clerk is directed to redact the victim's name at Doc. 1–14, p. 3.

**IT IS SO ORDERED**.

**Dated December 5, 2022, in Kansas City, Kansas.**

S/   John W. Lungstrum
**JOHN W. LUNGSTRUM**
**UNITED STATES DISTRICT JUDGE**